UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>    Plaintiff,<br><br>    v.<br><br>STEVEN M. BOLLA, WASHINGTON INVESTMENT NETWORK, SUSAN BOLLA, and ROBERT RADANO,<br><br>    Defendants. | Civil Action No. 02-1506 (CKK) |

**MEMORANDUM OPINION**
(May 6, 2008)

Currently pending before the Court is Defendant Robert Radano's Motion to Amend, Vacate, and Relieve Him From That Portion of the Final Judgment Imposing a Monetary Penalty Against Him. Plaintiff, the Securities and Exchange Commission ("SEC"), opposes Defendant Radano's Motion. After thoroughly reviewing Defendant Radano's Motion, the SEC's Opposition, Defendant Radano's Reply, and the statutes and case law cited therein, the Court issued a Minute Order requesting that both parties provide the Court with a list of any cases, reported or unreported, analyzing the availability of monetary penalties against those who commit aiding and abetting violations of the Investment Advisers Act of 1940 (the "Advisers Act"), 15 U.S.C. § 80b-1 *et seq*. The parties have now provided their submissions and Defendant Radano has, as permitted by the Court's April 22, 2008 Minute Order, responded to the SEC's supplemental Memorandum in Support of a Monetary Penalty Against Robert Radano. Upon searching consideration of the foregoing, the Court concludes that the SEC lacks authority to

seek, and the Court lacks jurisdiction to impose, monetary penalties against Defendant Radano for his aiding and abetting violations of the Advisers Act. The Court shall therefore GRANT [88] Defendant Radano's Motion, and shall vacate that portion of the Court's October 29, 2007 Order imposing a monetary penalty upon Defendant Radano individually. The remainder of the October 29, 2007 Order shall remain in effect.

## I: BACKGROUND

The Court presumes knowledge of the facts of this case, which are extensively addressed in both *SEC v. Bolla*, 401 F. Supp. 2d 43 (D.D.C. 2005) ("*Liability Mem. Op.*") and *SEC v. WIN*, 475 F.3d 392 (D.C. Cir. 2007) ("*Appeal Mem. Op.*"), as well as this Court's October 29, 2007 Memorandum Opinion embodying its judgment following remand from the United States Court of Appeals for the District of Columbia Circuit, *see SEC v. Bolla*, 519 F. Supp. 2d 76 (D.D.C. 2007) ("*Injunct. Mem. Op.*"). The Court therefore repeats herein only those facts necessary to resolve Defendant Radano's pending Motion. The Complaint in this action was filed on July 31, 2002, alleging violations of the Advisers Act. Thereafter, Defendants Steven M. Bolla and Susan Bolla entered into a settlement with the SEC, and a bench trial was held before this Court on July 26-28, 2004 to determine the liability of Defendants Radano and Washington Investment Network ("WIN"). On September 22, 2005, the Court issued a Memorandum Opinion finding Defendant WIN liable for violating Sections 203(f), 206(1) and 206(2) of the Advisers Act, 15 U.S.C. §§ 80b-3(f), 80b-6(1), and 80b-6(2) respectively, and finding that Defendant Radano aided and abetted WIN's violations. *See generally Liability Mem. Op.*, 401 F. Supp. 2d 43. The Court imposed a civil monetary penalty of $15,000 against Defendant Radano, and imposed a $50,000 penalty against Defendant WIN. In addition, the Court enjoined both Defendants "from

future violations of Sections 203(f), 206(1) and 206(2) of the Advisers Act." *See id.* at 74; *see also* Order, *SEC v. Bolla*, Civil Action No. 02-1506 (D.D.C. Sept. 22, 2005).

Defendants WIN and Radano appealed the issuance of the injunction, the form of the injunction, and the imposition of monetary penalties. On February 6, 2007, the D.C. Circuit issued an opinion affirming this Court's findings of violations, as well as the imposition of penalties. *See generally Appeal Mem. Op.*, 475 F.3d 392. The D.C. Circuit also affirmed on the merits this Court's issuance of an injunction, but found the injunction to be "insufficiently specific." *Id.* at 407. The D.C. Circuit therefore remanded the case to this Court "to reform the injunction and to address the question of overbreadth." *Id.* Following remand, the parties were unable to agree upon mutually acceptable language to amend the injunction in compliance with the D.C. Circuit Mandate, and proceeded to file briefing regarding the scope of the injunction.

On October 29, 2007, the Court issued a Memorandum Opinion and Order regarding the parties' briefing on the scope of the injunction, as well as Defendant Radano's efforts to expand that briefing beyond the narrow issue delineated in the D.C. Circuit's Mandate. *See generally Injunct. Mem. Op.*, 519 F. Supp. 2d 76. The Court's Memorandum Opinion rejected Defendant Radano's efforts in that respect, declining to reconsider its previous factual findings and legal conclusions, and also declining to reconsider Defendant Radano's arguments regarding the availability of civil monetary penalties for aiding and abetting liability under the Advisers Act. *See id.* at 79-80. Specifically, the Court noted that the D.C. Circuit refused to consider Defendant Radano's arguments regarding monetary penalties because he failed to raise them before this Court, but nevertheless affirmed this Court's "imposition of penalties on WIN and Radano, as set forth [in the *Liability Mem. Op.* and] judgment." *Id.* at 79 (quoting *Appeal Mem.*

*Op.*, 475 F.3d at 407). The Court therefore declined to consider Defendant Radano's arguments in that vein on remand, and simply clarified "that the statutory basis for civil penalties imposed in this case is Section 209(e) of the Investment Advisers Act of 1940, 15 U.S.C. § 80b-9(e)." *Id.* at 79 n.1. The Court continued to revise the injunction in order to comply with the D.C. Circuit's Mandate, *see generally id.*, and neither party has challenged the revised injunction.

On November 13, 2007, Defendant Radano filed his Motion to Amend, Vacate, and Relieve Him From That Portion of the Final Judgment Imposing a Monetary Penalty Against Him. The SEC moved to strike Defendant Radano's motion on November 14, 2007, arguing that it constituted an improper attempt to re-litigate the scope of the injunction. The Court denied the SEC's Motion to Strike by Minute Order dated February 7, 2008, noting that Defendant Radano's motion was filed pursuant to Federal Rules of Civil Procedure 59(e) and 60(b), and set a schedule for substantive briefing on Defendant Radano's Motion. Pursuant to the schedule entered by the Court, the SEC filed its Opposition to Defendant Radano's Motion on February 21, 2008, and Defendant Radano filed his Reply on March 6, 2008. Thereafter, the Court reviewed the parties' briefs and the case law and statutes cited therein, and on April 22, 2008 issued a Minute Order requesting that each party provide a list of any cases, reported or unreported, analyzing the availability of monetary penalties under Section 209(e) of the Advisers Act. The parties filed their responses to the Court's request on April 29, 2008, and on May 2, 2008, Defendant Radano–as permitted by the Court's April 22, 2008 Minute Order–filed an additional response to the SEC's April 29, 2008 submission.

## II: LEGAL STANDARDS

Defendant Radano brings his Motion pursuant to Federal Rules of Civil Procedure 59(e) and 60(b). Generally speaking, a motion for reconsideration is treated as a "[Federal Rule of Civil Procedure] 59(e) motion if filed within 10 days of entry of the challenged order and as a Rule 60(b) motion if filed thereafter." *United States v. Pollard*, 290 F. Supp. 2d 153, 156 (D.D.C. 2003) (quoting *United States v. Clark*, 984 F.2d 31, 32 (2d Cir. 1993)). Defendant Radano filed his Motion on November 13, 2007, ten days after the Court's October 29, 2007 Memorandum Opinion and Order, as counted under Rule 6 of the Federal Rules of Civil Procedure.[1] Nevertheless, the Court concludes that Defendant Radano's Motion is properly considered pursuant to Rule 60(b). The Court's October 29, 2007 Memorandum Opinion and Order simply clarified the basis for the Court's September 22, 2005 imposition of monetary penalties upon Defendant Radano. Defendant Radano's Motion argues that Section 209(e) has never provided authority for the SEC to seek, or jurisdiction for the Court to impose, monetary penalties for aiding and abetting violations of the Advisers Act, and thus actually challenges the original imposition of monetary penalties against Defendant Radano in the Court's September 22, 2005 Order. As Defendant Radano filed his Motion well outside the ten-day period following that Order, the Court considers it pursuant to Rule 60(b).

Rule 60(b) provides that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons . . . (1)

---

[1] Rule 6(a) instructs that in computing a time period specified in the Federal Rules of Civil Procedure, "intermediate Saturdays, Sundays, and legal holidays [are excluded] when the period is less than 11 days." Fed. R. Civ. P. 6(a)(2). Defendant Radano filed his Motion on November 13, 2007, which was 10 days after the Court's October 29, 2007 Memorandum Opinion and Order, excluding the intervening weekend and Veteran's Day holiday.

mistake . . . (4) the judgment is void; (5) . . . applying [the judgment] prospectively is no longer equitable; or (6) any other reason that justifies relief." Fed. R. Civ. P. 60(b).  The Rule

> was intended to preserve "the delicate balance between the sanctity of final judgments . . . and the incessant command of the court's conscience that justice be done in light of all the facts." *Bankers Mortgage Co. v. United States*, 423 F.2d 73, 77 (5th Cir.), *cert. denied*, 399 U.S. 927 [](1970) (emphasis in original); *accord*, *Compton v. Alton Steamship Co.*, 608 F.2d 96, 102 (4th Cir. 1979); *Boughner v. Secretary of HEW*, 572 F.2d 976, 977 (3d Cir. 1978); *Clarke v. Burkle*, 570 F.2d 824, 830 (8th Cir. 1978).  But as the Supreme Court has said, "There must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from." *Ackermann v. United States*, 340 U.S. 193, 198 [] (1950).  Rule 60(b) cannot, therefore, be employed simply to rescue a litigant from strategic choices that later turn out to be improvident. *See Marshall v. Board of Educ.*, 575 F.2d 417, 424 (3d Cir. 1978); *Federal's, Inc. v. Edmonton Investment Co.*, 555 F.2d 577, 583 (6th Cir. 1977); *Lubben v. Selective Serv. Sys. Local Bd. No. 27*, 453 F.2d 645, 651-52 (1st Cir. 1972).

*Good Luck Nursing Home, Inc. v. Harris*, 636 F.2d 572, 577 (D.C. Cir. 1980). Rule 60(b) "gives the district judge broad latitude to relieve a party from a judgment," *Richardson v. Nat'l R.R. Passenger Corp.*, 49 F.3d 760, 765 (D.C. Cir. 1995), but "should be only sparingly used," *Good Luck Nursing Home*, 636 F.2d at 577, and relief under Rule 60(b)(6) is granted in only "extraordinary circumstances," *Ackerman*, 340 U.S. at 199.

Defendant Radano stresses Rule 60(b)(4), arguing that the judgment imposing monetary penalties upon him is void.[2]  Rule 60(b)(4) does not provide an avenue for relief from an

---

[2] The Court agrees with Defendant Radano that Rule 60(b)(4) is the most appropriate basis for his Motion. As discussed below, Defendant Radano did not challenge the availability of civil monetary penalties for aiding and abetting liability under Section 209(e) of the Advisers Act before the Court imposed such penalties its September 22, 2005 Memorandum Opinion and Order. As the Court therefore did not consider the availability of such penalties, its September 22, 2005 imposition of a civil monetary penalty against Defendant Radano cannot be described as "mistake" under Rule 60(b)(1). Moreover, the applicability of Rule 60(b)(4) to Defendant Radano's Motion obviates the need to consider whether relief might also be appropriate under Rule 60(b)(5) or (6).

erroneous disposition, "[r]ather, before a judgment may be deemed void within the meaning of the rule, 'it must be determined that the rendering court was powerless to enter it.'" *Combs v. Nick Garin Trucking*, 825 F.2d 437, 442 (D.C. Cir. 1987) (quoting *V.T.A., Inc. v. Airco, Inc.*, 597 F.2d 220, 224 (10th Cir. 1979)).  Moreover, while a motion pursuant to Rule 60(b)(1) "'is committed to the discretion of the trial court' . . . 'there is no question of discretion on the part of the court when a motion is under Rule 60(b)(4).'" *Id.* at 441 (quoting *Jackson v. Beech*, 636 F.2d 821, 835 (D.C. Cir. 1980) and 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2862, at 197 (1973)).  "[A] party attacking a judgment as void need show no meritorious claim or defense or other equities on his behalf; he is entitled to have the judgment treated for what it is, a legal nullity." *Id.* at 441-42 (internal quotations and citations omitted). Further, while Rule 60(c) provides that "[a] motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order," Fed. R. Civ. P. 60(c), "the Rule places no time limit on an attack upon a void judgment, nor can such a judgment acquire validity because of laches on the part of him who applies for relief from it."  *Austin v. Smith*, 312 F.2d 337, 343 (D.C. Cir. 1962); Wright & Miller, *supra*, at 324-35.

### III:  DISCUSSION

The Court has not previously had the chance to consider Defendant Radano's argument that Section 209(e) of the Advisers Act, 15 U.S.C. § 80b-9(e) does not authorize the SEC to seek, nor provide the Court with jurisdiction to impose, monetary penalties for aiding and abetting violations of the Act.  As the Court noted in its September 22, 2005 Memorandum Opinion, the SEC requested that the Court impose a civil monetary penalty upon Defendant Radano for each

aiding and abetting violation of the Advisers Act via its Amended Trial Brief.  *See Liability Mem. Op.*, 401 F. Supp. 2d at 74-75.  Defendant Radano admits that he did not challenge the availability of such penalties under Section 209(e) at that time.  *See* Radano Mot. at 6 n.4 ("neither party gave more than perfunctory attention to the statutory basis or appropriateness of monetary penalties either before, during, or after trial. . . .").  Because Defendant Radano did not raise the issue, the Court's September 22, 2005 Memorandum Opinion and Order imposing monetary penalties on Defendant Radano did not consider it, and the Court made no ruling on it.  As a result, the D.C. Circuit declined to consider Defendant Radano's argument regarding Section 209(e) when he raised it on appeal, noting that he "did not raise these issues before the district court, and therefore the issues are forfeit."  *Appeal Mem. Op.*, 475 F.3d at 407.

Defendant Radano's argument is now squarely before the Court, however, on his Rule 60(b)(4) motion.[3]  Pursuant to Section 209(e) of the Advisers Act, "[w]henever it shall appear to the Commission that any person has violated any provision of [the Act] . . . the Commission may bring an action in a United States district court to seek, and the court shall have jurisdiction to impose, upon a proper showing, a civil penalty *to be paid by the person who committed such a violation*."  15 U.S.C. § 80b-9(e)(1) (emphasis added).  There is no question that Section 209(e) does not explicitly authorize monetary penalties for aiding and abetting violations of the Advisers

---

[3] In addition to discussing Defendant Radano's argument that Section 209(e) does not authorize civil monetary penalties for aiding and abetting violations of the Advisers Act, the SEC's Opposition to Defendant Radano's Motion seems to address an argument apparently raised by Defendant Radano on appeal, *i.e.*, that a civil monetary penalty is impermissible because it was not requested with sufficient specificity in the Complaint in this action.  *See* SEC Mem. in Support of Judgment Imposing Penalty on Def. Radano (hereinafter "SEC Opp'n") at 2-3.  The Court does not address that argument, as Defendant Radano does not raise it in connection with the instant motion.

Act in enforcement actions brought in the district courts.

According to Defendant Radano, this lack of explicit authorization is fatal, because Congress explicitly provided the SEC with authority to seek penalties and other remedies against primary violators *as well as* aiders and abetters in other securities laws enacted prior to, contemporaneous with, and after Section 209(e). *See* Radano Mot. at 3. Defendant Radano's argument is premised upon the principle that "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 22-23 (1983); *see also Persinger v. Islamic Republic of Iran*, 729 F.2d 835, 843 (1984) ("When Congress uses explicit language in one part of a statute to cover a particular situation and then uses different language in another part of the same statute, a strong inference arises that the two provisions do not mean the same thing") (citing *Russello*). Defendant Radano's argument gains particular force because, in the context of the federal securities laws, the Supreme Court has explicitly stated that "Congress knew how to impose aiding and abetting liability when it chose to do so. If . . . Congress intended to impose aiding and abetting liability, we presume it would have used the words 'aid' and 'abet' in the statutory text. But it did not." *Central Bank of Denver v. First Interstate Bank*, 511 U.S. 164, 176-77 (1994).[4]

---

[4] *Central Bank* considered whether private civil liability under § 10(b) of the Securities and Exchange Act of 1934 (the "Exchange Act") extended to those who aided and abetted violations of that Section's prohibition on manipulative and deceptive acts in connection with the purchase or sale of securities. *See* 511 U.S. at 166-67. In concluding that it did not, the Supreme Court stressed that "cases considering the scope of conduct prohibited by § 10(b) in private suits have emphasized adherence to the statutory language." *Id.* at 173. The Supreme Court has taken a similar approach in interpreting the Advisers Act: in *Transamerica Mortgage Advisers, Inc. v.*

Here, as Defendant Radano correctly notes, Section 209(e) was enacted into law by Section 402 of the Securities Enforcement Remedies and Penny Stock Reform Act of 1990 (the "Remedies Act"), Pub. L. No. 101-429, 104 Stat. 931, 949-51. *See* Radano Mot. at 3. While Section 209(e)–which provides for money penalties in civil actions–does not explicitly provide for monetary penalties against aiders and abettors, the immediately preceding section of the Remedies Act (Section 401, codified at Advisers Act Section 203(i))–which governs monetary penalties in administrative proceedings before the SEC's administrative law judges–explicitly provides such penalties. Specifically, Section 401 of the Remedies Act provides that "the Commission may impose a civil penalty if it finds, on the record after notice and opportunity for hearing that such person–(A) has willfully violated any provision of [the federal securities laws; or] (B) has willfully aided, abetted, counseled, commanded, induced, or procured such a violation by any other person. . . ." *Id.*, 104 Stat. at 946-47, codified at 15 U.S.C. § 80b-3(i). Similarly, and as Defendant Radano also points out, *see* Radano Mot. at 3, pursuant to the Remedies Act, Congress placed Section 209(e) within the Advisers Act immediately following an already existing provision that explicitly authorizes injunctive relief against both primary violators and aiders and abettors. *See* Advisers Act § 209(d), 15 U.S.C. § 80b-9(d).

Moreover, Defendant Radano is correct that in 1995–in response to the Supreme Court's holding in *Central Bank*–Congress enacted Section 104 of the Private Securities Litigation

---

*Lewis*, 444 U.S. 11 (1979), the Supreme Court held that a limited private remedy exists under the Advisers Act to void an investment contract, but rejected arguments that the Act confers other legal and equitable private causes of action. *See generally id.* In so doing, the Supreme Court noted that "it is an elemental cannon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." *Id.* at 19-20.

Reform Act of 1995 ("PSLRA"). *See* Radano Mot. at 3-4. PSLRA Section 104 (codified at 15 U.S.C. § 78t(e)) amended the Exchange Act to specifically authorize monetary penalties against aiders and abetters in civil enforcement actions by the SEC under that Act, providing that "any person that knowingly provides substantial assistance to another person in violation of a provision of [the Exchange Act], or of any rule or regulation issued under [the Exchange Act], shall be deemed to be in violation of such provision to the same extent as the person to whom such assistance is provided." 15 U.S.C. § 78t(e). Congress did not, however, amend the Advisers Act in a similar manner.

The SEC responds to Defendant Radano's argument in this respect by asserting that the "legislative history of [PSLRA Section 104] makes clear that Congress believed that the SEC had authority to bring injunctive actions and obtain civil monetary penalties against aiders and abettors <u>before</u> *Central Bank of Denver* under the general rubric of a 'violation.'" SEC Mem. in Support of Monetary Penalty Against Robert Radano (hereinafter "SEC Suppl. Opp'n") at 3-5 (quoting S. Rep. No. 104-98, 104th Cong. (1995), 141 Cong. Rec. S17934 (daily ed. Dec. 5, 1995) (statement of Sen. D'Amato); *id.* at S17957 (statement of Sen. Dodd); *id.* at S17977 (statement of Sen. Reid); *id.* at 17937 (statement of Sen. Sarbanes)). The SEC further asserts that the Supreme Court recently adopted this view in *Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*, --- U.S. ---, 128 S. Ct. 761 (2008), where it again considered the scope of the private right of action implied in § 10(b) of the Exchange Act. *See generally id.* The SEC is correct that the Supreme Court explained its holding in *Stoneridge*, in part, by noting that allowing a private right of action in the situation at issue would be inconsistent with PSLRA Section 104 because "Congress amended the securities laws to provide for limited coverage of

aiders and abettors. Aiding and abetting liability is authorized in actions brought by the SEC but not by private parties." *Id.* at 771. The SEC is also correct that, in so doing, the Supreme Court described "Congress' amendment to the [Exchange] Act [as] restoring aiding and abetting liability in certain cases but not others." *Id.* at 772.

The SEC maintains that, notwithstanding the fact that *Stoneridge* deals with the Exchange Act and not the Advisers Act, it is relevant to the instant case because the language of the Exchange Act provision clarified by PSLRA Section 104 is identical to Section 209(e)(1) of the Advisers Act. *Compare* 15 U.S.C. § 78u(d)(3)(A) *with id.* § 80b-9(e). According to the SEC, *Stoneridge* demonstrates Supreme Court acceptance that "the SEC had the authority to obtain Exchange Act remedies against aiders and abettors before *Central Bank* [] based on statutory language that refers only generically to 'violations' and does not differentiate between primary and secondary violations," and thereby suggests that the SEC has always had similar authority under Section 209(e) of the Advisers Act. SEC Suppl. Opp'n at 5. The SEC's argument fails, however, because the *Stoneridge* language upon which it rests is, at best, dicta discussing a different securities act. *Stoneridge* does not discuss the Advisers Act at all, and thus does not directly bear upon Congress' view of the SEC's ability to seek monetary penalties against aiders and abetters in enforcement actions under the Advisers Act.

As to that question, the far more convincing evidence is found in Section 401 of the Remedies Act (enacted directly before Section 209(e) and codified at Advisers Act Section 203(i), 15 U.S.C. § 80b-3(i)) and Section 209(d) of the Advisers Act, discussed above. Each of those provisions of the Advisers Act explicitly authorizes penalties and remedies for aiding and abetting violations of the Act, and the Court cannot overlook the Supreme Court's admonishment

that "Congress knew how to impose aiding and abetting liability when it chose to do so. If . . . Congress intended to impose aiding and abetting liability, we presume it would have used the words 'aid' and 'abet' in the statutory text. But it did not." *Central Bank*, 511 U.S. at 176-77.[5]

The SEC's additional arguments simply fail to overcome this clear instruction from the Supreme Court and the principle of statutory construction that "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello*, 464 U.S. at 22-23. Specifically, the SEC argues that "[c]ommon sense and context dictate that, as used in [Section 209(e)] the term 'violation' includes both direct contraventions of the Advisers Act as well as conduct that aids and abets a direct contravention of the Advisers Act." SEC Opp'n at 3. The SEC points to the fact that this Court used the term "violation" generically in its September 22, 2005 Memorandum Opinion to refer both to WIN's primary violation of the Advisers Act and Defendant Radano's aiding and abetting violation. *Id.* This point is of no consequence, however, because Defendant Radano's liability under the Advisers Act is not at issue here, and the Court's September 22, 2005 Memorandum Opinion simply did not consider the availability of monetary penalties for aiding and abetting violations under Section 209(e).

The SEC also argues that Congress intended the term "violation" in Section 209(e) to

---

[5] The Court also notes that Section 209(e) of the Advisers Act authorizes a civil monetary penalty against "*the* person who committed such violation." 15 U.S.C. § 80b-9(e) (emphasis added). As Defendant Radano correctly points out, the D.C. Circuit has explained that "[i]t is a rule of law well established that the definite article 'the' particularizes the subject which it precedes. It is a word of limitation as opposed to the indefinite or generalizing force of 'a' or 'an.'" *Am. Bus Ass'n v. Slater*, 231 F.3d 1, 4-5 (D.C. Cir. 2000) (quoting *Brooks v. Zbka*, 450 P.2d 653, 655 (1969)).

include both "direct contraventions and conduct that aids and abets a direct contravention of the Advisers Act." SEC Opp'n at 5. According to the SEC, this diction is supported by the fact that Section 209(d) of the Act explicitly gives the SEC authority to bring injunctive actions against both direct violators and aiders and abetters, while Advisers Act Section 214, 15 U.S.C. § 80b-14, only gives United States district courts jurisdiction "to enjoin any violation" of the Advisers Act. *Id.* (citing 15 U.S.C. §§ 80b-9(d) and 80b-14). The SEC's argument, however, would "effectively write off large chunks of aiding and abetting language in Advisers Act Sections 203(i) and 209(d) [(discussed above)] as meaningless surplusage," Radano Reply at 4, and is therefore unconvincing.

Finally, the SEC asserts that Defendant Radano's interpretation of Section 209(e) "would make no sense" because it would mean that the SEC could only obtain monetary penalties against aiders and abetters under the Advisers Act in cases pursued administratively, rather than in district court, and would therefore require the SEC to bring an administrative proceeding in addition to an injunctive action whenever it sought monetary penalties against an aider and abetter. SEC Opp'n at 6. As Defendant Radano correctly notes, however, the federal securities laws are rife with examples of remedies available to the SEC in administrative enforcement actions that are not available to the Commission when it proceeds by a federal court injunctive action. Radano Reply at 2. These include cease-and-desist orders, industry bars, suspensions, and censures. *See generally* 15 U.S.C. §§ 78o(b)(4) and (b)(6); 15 U.S.C. §§ 80b-3(e), 3(f), and (i).

In sum, the SEC offers no convincing rationale for ignoring the Supreme Court's instructions and the cannons of statutory construction discussed above. Moreover, although the

SEC asserts that it "has long sought and U.S. district courts have long imposed . . . civil money penalties against those who commit aiding and abetting violations of the Advisers Act," SEC Opp'n at 5, it does not point to any precedent actually analyzing the availability of such penalties. While the SEC initially supported its claim with a citation to *SEC v. Barr Financial Group*, 1999 WL 1209520, \*6 (M.D. Fla. May 5, 1999), in which the court imposed monetary penalties upon an aider and abetter, that case contains no indication that the court actually analyzed the issue. Further, when explicitly asked to provide authority analyzing the availability of such penalties, *see* Minute Order, April 22, 2008, the SEC could not do so and instead proffered a list of cases in which monetary penalties were imposed upon aiders and abetters for Advisers Act violations in the context of settlements and default judgments. *See* SEC Suppl. Opp'n at 1-2. It therefore appears that this is a case of first impression and, for the reasons discussed above, the Court concludes that Section 209(e) does not authorize the SEC to seek, or grant this Court jurisdiction to impose, monetary penalties upon Defendant Radano for his aiding and abetting violations of the Advisers Act.

## IV:  CONCLUSION

For the foregoing reasons, the Court concludes that Section 209(e) of the Advisers Act does not authorize the SEC to seek, or grant this Court jurisdiction to impose, monetary penalties upon Defendant Radano for his aiding and abetting violations of that Act. The Court shall therefore GRANT [88] Defendant Radano's Motion to Amend, Vacate, and Relieve Him From That Portion of the Final Judgment Imposing a Monetary Penalty Against Him, and shall vacate that portion of its October 29, 2007 Order imposing a $15,000 civil monetary fine upon Defendant Radano pursuant to Section 209(e). The remainder of the Court's October 29, 2007

Order shall remain in effect. An appropriate Order accompanies this Memorandum Opinion.

Date: May 6, 2008

                                                                          */s/*
                                        COLLEEN KOLLAR-KOTELLY
                                        United States District Judge